Catron, Ch. J.
delivered the opinion of the court.
This case presents the same point adjudged in Davis vs. Parks, and Ballentine vs. Greer, (6 Yerg. 253, 267). and it is insisted that the court was mistaken when it supposed the lien contemplated by the act of 1825, would only be asserted by an execution on part of the landlord against the tenant. The legal title to the crop, it is presumed. is in the landlord, and that the tenant holds possession for him the same as the barkeeper at an inn does for the proprietor, the horse of the guest; and that the same lien exists for the rent in favor of the landlord, that *496 pertains to the innkeeper for the tavern bill. That if the f , . , , , 1 ... . - , barkeeper fraudulently parts with the possession of the horse, even to the guest himself, and the bill is not paid, trover will lie.
It is true, that where possession is lawfully delivered to an innkeeper, taylor, dyer, miller, or carrier, for hire, the property may be retained until the sum due the tradesman, &c. for the labor and expense bestowed on it is paid; but he retains his lawful possession, whereas the landlord never has had possession of the crop grown on the premises, and proceeds upon his naked right. 2 Kent’s Com. 496, well explains the description of lien referred to by the counsel for the defendant. Were the premises true,' the conclusion would follow: if the right of property is in the landlord, he may recover in trover for its conversion. What description of lien the legislature referred to, in the act of 1825, must be inferred. The court have heretofore thought the lien of the landlord’s judgment and execution, took date from the day the rent fell due, and not the date of the judgment, and test of the first execution. That the legislature meant this, is yet believed to be apparent from the act, the reasons fo’r which, are given in the cases cited from 6 Yerg.; and that it must be so from the strict construction given to statutes conferring a priority of satisfaction in cases of the government, (1 Kent Com. 24,) and in all other cases where the rules of the common law have been altered in favor of a particular class of creditors.
If it be true, that the landlord has title, he may sue every person who has received by purchase any part of the product of the rented premises; twenty may be recovered against, and each to the amount of the rent; and who of the defendants is to make satisfastion, no one can tell; and if double satisfaction were likely to be obtained, it cannot be seen how it could be prevented. Again: the purchasers from the tenant are sued, recover *497 ed against, and pay; then they separately sue the tenant for a defect of title in the property sold them; he relies in defence on payment of the rent to the landlord, or a setoff, and for the first time between the tenant' and third persons, it is legally ascertained whether there is rent due. In the cases before the court, the landlord has no judgments against the tenant; they are precisely like Ballentine vs. Greer. The costs of these double sets of suits would far exceed the rent in most instances.
Placing the construction of the statute on the ground that the lien takes effect only on an execution for the rent, and extends to the date of the forfeiture of the contract, and we have legal and settled rules governing the priorities of contending creditors of the tenant, and purchasers from him, and we avoid many and great inconveniences.
Judgment reversed.